Ronnie P. Hawks (No. 019122)
E-mail: RPH@JHC.Law
James L. Csontos (No. 010823)
E-mail: JLC@JHC.Law
**JENNINGS, HAUG & CUNNINGHAM, L.L.P.**
2800 N. Central Avenue, Suite 1800
Phoenix, AZ 85004-1049
Telephone:   602-234-7800
Facsimile:    602-277-5595

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| SWVP-GTIS MR LLC, | Case No.: |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| David Brenhardt, Secretary of The United States Department of the Interior; Darryl LaCounte, Acting Director of the United States Bureau of Indian Affairs, | |
| Defendants. | |

## NATURE OF THE CASE

1. In this action, Plaintiff SWVP-GTIS MR LLC ("SWVP"), challenges violations of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, *et. seq.,* and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, by the Secretary of the United States Department of Interior ("DOI" or "Department") and Acting Director of the Bureau of Indian Affairs ("BIA").

2. Two existing irrigation wells operated by the BIA's San Carlos Irrigation Project ("SCIP" or "the Project") were located within 500 feet of Florence Copper Inc.'s ("FCI") in situ leach copper mining pilot test facility, and were ordered to be abandoned and closed as part of FCI's permitting requirements.

3. Defendants permitted the installation of a new high-volume irrigation well at a location greater than 500 feet from FCI's in situ copper leaching facility.

4. In doing so, Defendants violated NEPA by allowing the installation and operation of the new well without conducting the required environmental review to assess the impact of the new high-volume irrigation well and FCI's ability to control groundwater contaminants at the pilot test facility on area groundwater supplies, human health and the environment.

5. Defendants acted hastily and in utter disregard of the procedural mandates of NEPA, the landmark environmental statute that requires all federal agencies prepare an Environmental Impact Statement ("EIS")[1] evaluating any action that may significantly impact the quality of the human environment. Rather than preparing an EIS, or even an Environmental Assessment ("EA") to determine whether an EIS is necessary, Defendants did not undertake any environmental analysis at all.

6. Due to Defendants' unlawful activities, SWVP will sustain imminent and irreparable harm. Defendants' failure to comply with NEPA directly harms SWVP, which owns property and wells adjacent to the new well and test facility, by increasing the risk that current and proposed copper mining will contaminate the groundwater aquifer. There may also be other impacts that should be addressed or mitigated after a thorough environmental review of the impact caused by the installation of the new high-volume irrigation well.

7. BIA's decision also facilitates future commercial in situ leach mining operations, operations for which permits already are being sought. BIA failed to consider the impacts of commercial mining operations on air, soil, groundwater, surface waters, noise levels, area traffic or any other facet of human health or the environment.

8. SWVP asks this Court to preliminarily and permanently enjoin defendants from further operation of the new well and set aside any approvals for such operations as arbitrary and capricious, an abuse of discretion, not in accordance with law, in excess of statutory authority, and without observation of procedure required by law. 5 U.S.C. § 706.

---

[1] A Table of Abbreviations used in this Complaint is found at page 14, below.

**JURISDICTION AND VENUE**

9. This action arises under the provisions of the National Environmental Policy Act, 42 U.S.C. §§ 4321, *et. seq.* (1970), and the Administrative Procedure Act, 5 U.S.C. 701 *et. seq.* (1966).

10. This Court has jurisdiction of this action under 28 U.S.C. § 1331 (Federal Question), 28 U.S.C. § 1361 (Mandamus), 5 U.S.C. § 551, *et seq*. (APA), and it may issue a declaratory judgment and provide for further relief pursuant to 28 U.S.C. §§ 2201 and 2202 (Declaratory Judgments).

11. Defendants' approval of the closure and abandonment of the two existing irrigation wells and construction of a new irrigation well constitutes "final agency action" under the APA.

12. Venue is proper in this Court under the general venue provisions of the United States Code, 28 U.S.C. § 1391(e), as well as under specific statutory provisions of the APA, 5 U.S.C. § 703.

13. In addition, SWVP maintains an office in Scottsdale, Arizona. SWVP owns land within and adjacent to the Project, which is located about 50 miles outside of Phoenix, Arizona. The irrigation wells at issue are also located within the SCIP. Assignment is proper in the Phoenix Division because the well and mine sites at issue are located in Pinal County.

14. An actual and justiciable controversy exists between SWVP and Defendants.

**PARTIES**

15. Plaintiff SWVP is Delaware company doing business in Arizona.

16. SWVP is a real estate development company that owns 4,376 acres of land in and around the Town of Florence, in close proximity and adjacent to FCI's property, and including land located within the SCIP Project and directly adjacent to the parcel on which the subject well is located. This land is zoned "Planned Use Development" for the Merrill Ranch Master Planned Community, zoning that provides for a mixture of

residential and commercial uses. SWVP is undertaking to develop a master-planned community composed of mixed residential and commercial development on this land. A map depicting the SCIP Project Land, SWVP's land and the wells at issue is attached as **Exhibit "A**."

17. As an area landowner in general and a SCIP landowner in particular, SWVP is directly impacted by the DOI and BIA's decisions and actions regarding the land located within the Project, including activities that could impact the groundwater resources of SWVP's land, the Town of Florence, and the region.

18. The United States Department of the Interior is the federal agency responsible for managing approximately 500 million acres of federal public lands for the protection of the natural human environment, including Project lands. The Department of Interior is an agency of the United States subject to the APA, 5 U.S.C. § 701(b)(1).

19. Defendant David Brenhardt is sued in his official capacity as Secretary of the Department. In this capacity, he is responsible for ensuring that the Department and the agencies within the Department, including the BIA, comply with all applicable laws and regulations, including NEPA and the APA.

20. Defendant Darryl LaCounte is sued in his official capacity as Acting Director of the BIA. In this capacity, he is responsible for the management of SCIP, including the land on which the new well is located. Mr. LaCounte is also responsible for ensuring the BIA complies with all applicable laws and regulations, including NEPA and the APA.

21. The Project is operated and maintained by the BIA to provide irrigation water to lands on the Gila River Reservation and certain non-Indian lands in Pinal County, Arizona. The Regional Director of the Phoenix Area Office of the BIA has been delegated authority over the operation and maintenance of SCIP, including policies, rate schedules and disputes arising in the Project.

22. SWVP uses and enjoys lands it owns within the SCIP, including lands that are or will be affected by the operation of the new well in close proximity to the pilot test facility.

23. As a SCIP landowner, SWVP is entitled to receive water from SCIP that is suitable in quality for the irrigation of SWVP lands within the Project. SWVP owns wells in the area of the Project and adjacent to the pilot test facility that, as discussed below, extract groundwater from the same aquifer from which SCIP's wells pump and into which mining operations are injecting and will inject acid mining solutions.

24. SWVP intends to continue to use, enjoy and develop these lands for residential and commercial uses in the future.

25. Defendants' failure to comply with NEPA injures SWVP. SWVP has a procedural interest in the proper management of these lands in full compliance with environmental laws and regulations, including NEPA, and these statutes' implementing regulations. Defendants' failure to comply with NEPA particularly injures SWVP by denying SWVP the ability to adequately participate in the public review process and to obtain information concerning environmental impacts that NEPA requires agencies to disclose and analyze before allowing the operation of new wells and mining operations that could detrimentally human health and the environment.

26. The construction and operation of a new high-volume irrigation well so close to a major new mining facility significantly increases the risk of detrimental environmental impacts, including the contamination of groundwater.

27. SWVP is adversely affected by the Defendants' conduct as a neighboring landowner and an SCIP landowner.

28. SWVP's environmental, aesthetic, recreational, economic and procedural interests have been and will continue to be adversely affected and irreparably injured by the operation of a new large-volume irrigation well in close proximity to a major new mining facility without any environmental review. These are actual, concrete injuries

caused by Defendants' refusal to comply with NEPA, the implementing regulations for this law, and the APA.  SWVP's injuries will be redressed by the relief sought.

## FACTUAL ALLEGATIONS / CHRONOLOGY OF EVENTS

29. SCIP was authorized by an act of Congress in 1924 to provide irrigation water to lands on the Gila River Reservation and certain non-Indian lands in Pinal County, Arizona.  The Project also provides electricity to tribal and non-Indian customers.

30. SCIP provides water to its landowners, including SWVP, from both surface water and groundwater.  SCIP operates and maintains numerous irrigation wells that serve its landowners.  These are large production wells, many of which pump in excess of 1,000 gallons per minute.  The operation of a large production irrigation well creates a large cone of depression in the aquifer around the well, changing the flow of groundwater in the area such that groundwater flows toward the well.

31. FCI is a Canadian mining company that owns approximately 1,182 acres within the municipal boundaries of the Town of Florence, near the Town's geographic center.  In February 2010, FCI obtained an assignment of a mineral lease for 160 acres of state trust land, which is wholly surrounded by FCI's private land holdings.

32. In December 2018, FCI began operating an in-situ leach copper mining pilot test facility on the state-lease parcel, to determine in part if in-situ leach copper mining can be performed at this site without contaminating the drinking water aquifer.  FCI's ultimate plan is to develop a commercial copper mine on its leased and private land, employing the same in-situ leach mining process.  FCI has begun the permit application process for at least one of the permits required for commercial operation.

33. The pilot test facility involves a small number of injection, recovery, and monitoring wells located within a few acres.  The data and results collected from the pilot test facility purportedly will be used to evaluate the economic viability of proposed commercial operations and assess methods used to control contaminants injected into the aquifer.

34. Under the in-situ leach process, injection wells pump a sulfuric acid mining solution into the copper-bearing bedrock (the "Oxide Zone") to dissolve the copper. The copper-bearing solution, along with native groundwater, is pumped back to the surface through recovery wells. The recovered solution is piped to a solvent extraction and electrowinning facility to extract the copper for commercial sale.

35. The acid solution also dissolves native minerals and heavy metals in the aquifer, altering groundwater chemistry and increasing concentrations of many regulated and toxic contaminants (including arsenic, uranium, lead, and mercury, among many others) in the aquifer.

36. The Oxide Zone is located directly below the aquifer's Lower Basin Fill Unit ("LBFU"). No geologic or hydrogeologic barrier exists between the Oxide Zone and the LBFU. The two portions of the aquifer are connected hydrogeologically, with groundwater flowing between the two.

37. The LBFU is the primary drinking water supply for the Town of Florence and its residents. The LBFU is also the drinking water aquifer upon which SWVP depends as a water supply for commercial and residential development on its land. The LBFU provides good quality drinking water that requires little treatment for use by the Town, its residents and SWVP.

38. Because mining will inject contaminants into the aquifer and free additional contaminants from the bedrock portions of the aquifer, it is imperative that none of the solution or dissolved minerals are allowed to escape and contaminate the local groundwater supply.

39. Pollution of groundwater beyond the mined area purportedly will be prevented through hydraulic control of the injected acid mining solutions and copper-laden groundwater. In theory, hydraulic control is achieved by pumping more water from recovery wells than is injected through the injection wells. If the in-situ leach system is properly designed, operated, and monitored, pumping more than is injected is supposed

to create a cone of depression around the recovery wells that draws water inward toward those wells and keeps mining contaminants from migrating away from the mined area.

40. In addition to potential groundwater impacts and groundwater permits, the pilot test and future commercial operations involve both known impacts and potential risks to soils, air, surface water, other environmental media, noise levels, cultural resources, traffic, and other aspects of human health and the environment.

41. The in-situ leach technique at this mine site has never been used for commercial copper mining in Arizona, or upon information and belief, anywhere else in the United States.

42. The State of Arizona and USEPA have only limited experience regulating and monitoring this type of mining. The mine has proven to be highly controversial. SWVP and many local residents and landowners oppose the project, primarily due to threats to groundwater supplies. Litigation and disputes over the mine have been ongoing since at least 2010.

43. The environmental reviews conducted as part of federal and state permitting processes to date have never evaluated the impacts of a new BIA irrigation well near the pilot test facility and even closer to a proposed major new mine.

44. Regulatory agencies required numerous core holes and wells located within 500 feet of the pilot test well field to be sealed and abandoned before mining operations began.

45. This requirement stems from the risk that those wells and core holes would provide conduits for acid mining solutions to flow away from the mine area and contaminate the surrounding drinking water aquifer.

46. Two of the wells that fell within the 500-foot radius were SCIP's irrigation wells BIA-9 (ADWR Well Reg. No. 55-621948) and 10-B (ADWR Well Reg. No. 55-621949). Regulatory agencies required that these wells be abandoned before pilot test operations began, because operation of these large-volume irrigation wells so close to the pilot test wells was not safe.

47. Sometime in the latter half of 2017, BIA agreed to stop using the two existing irrigation wells, although it is not clear whether the wells were closed and abandoned.

48. At approximately the same time, BIA and FCI agreed to install and operate a new single high-volume irrigation well located on FCI's property and within the Project.

49. The decision to install a new high-volume irrigation well was not made public and no public comment or hearing was allowed or held.

50. SWVP learned of the decision only through a Freedom of Information Act request filed with the BIA in August 2018.

51. On information and belief, BIA did not execute any formal agreement regarding the well replacement decision and did not conduct any sort of administrative or regulatory approval or permit process with regard to the decision. SWVP requested documentation regarding the decision in its August 2018 FOIA request and in a subsequent request in February 2018 and received nothing evidencing that the BIA's decision was documented in any way.

52. Well 9-B (ADWR Well Reg. No. 55-227867), located in the southwest corner of FCI's property and within the SCIP, has now been drilled.

53. The new BIA Well 9-B was proposed to pump 1,200 gallons per minute and to extract nearly 2,000 acre-feet per year from the regional aquifer. It is located within a few thousand feet of the pilot test facility and much closer to the area on which contaminants will be placed during commercial operations. Upon information and belief, the new well is currently operational.

54. The construction and operation of a high-volume irrigation well so close to the pilot test facility and commercial mining operations could impact control of groundwater contaminants at the mine site.

55. Pumping at such high volumes from BIA Well 9-B may draw contaminants away from the mine site toward the new well, thereby potentially contaminating the local drinking water aquifer.

9

56.     Despite the fact that the new well is located within the SCIP land governed by the BIA, and despite the fact that the new well was constructed in close proximity to a pilot test mine (a facility that is now operational and continuously injecting sulfuric acid into the ground) and a planned commercial copper mine, Defendants performed no assessment to evaluate the potential environmental effects that could arise from the construction and operation of a new high-volume irrigation well or to evaluate the safety or potential contamination of the groundwater from the new well that SCIP landowners use to irrigate their crops and that SWVP and others in the Town of Florence depend upon for potable water.

57.     The DOI and BIA did not perform the required environmental review under NEPA before work on the new well commenced or before it began operations.  On information and belief, DOI and BIA have never evaluated the environmental impacts of the new well.

58.     SWVP submitted two separate FOIA requests to BIA, on August 13, 2018 and February 1, 2019, asking for any NEPA-related documentation or evaluation done in connection with the new well, as well as the agency's reasoning to the extent it took the position that NEPA did not apply.

59.     SWVP received no NEPA documentation in response to either FOIA request, and no explanation was given as to why such documentation did not exist or why the agency believed NEPA did not apply.

**COUNT I – VIOLATION OF NEPA**

60.     SWVP realleges and incorporates herein by reference all allegations stated above.

61.     BIA's decision to allow the construction and operation of a new high-volume irrigation well, BIA Well 9-B, on SCIP property, just a few thousand feet from an operational copper mine test facility and even closer to a proposed major new copper mine, is a "major Federal action significantly affecting the quality of the human environment" and required compliance with NEPA.

62. NEPA and CEQ's implementing regulations require Defendants to prepare an EIS for any "major Federal action significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). Defendants failed to comply with NEPA and CEQ regulations by failing to prepare an EIS, or even an EA, in connection with their decision to allow the construction and operation of a new high-volume irrigation well close to the pilot test facility and even closer to a proposed major new copper mine.

63. Defendants also failed to comply with NEPA and the BIA's published guidance by failing to prepare a CEER Checklist to the extent the position was taken that the action at issue was categorically excluded from further analysis and documentation in an EA or EIS.

64. Defendants' allowance of the construction and operation of the new high-volume irrigation well constitutes a final agency action.

65. Defendants' failure to prepare a CEER checklist, an EA or an EIS is a violation of NEPA and its implementing regulations, and is agency action unlawfully withheld or unreasonably delated, and/or agency action that is arbitrary and capricious, an abuse of discretion, not in observance of procedure required by law, in excess of statutory jurisdiction, authority, or limitations within the meaning of the judicial review provisions of the APA. 40 C.F.R. § 1502.9(c)(1)(ii); 5 U.S.C. §§ 706(1), 706(2).

66. Defendants' failure to comply with NEPA and the CEQ regulations in connection with such final agency action must be set aside as arbitrary, capricious, an abuse of discretion, not in accordance with law, in excess of statutory authority, and without observance of procedure required by law, all in violation of the APA. 5 U.S.C. § 706(2)(A), (C) and (D).

67. Because of the above-mentioned violations of NEPA, SWVP will suffer immediate and irreparable harm if the Defendants are not enjoined from operating the wells at issue, pending completion of an environmental review process that complies with NEPA and the regulations promulgated thereunder.

68. SWVP lacks an adequate remedy at law.

## COUNT II – VIOLATION OF APA

69. SWVP realleges and incorporates herein by reference all allegations stated above.

70. Under the APA, administrative actions must be vacated where the agency relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decisions that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

71. Defendants violated these fundamental requirements of the APA in connection with their decision to allow the construction and operation of a new well so close to an operating copper mining test facility and even closer to a proposed major new copper mine without undertaking any environmental analysis under NEPA.

72. Accordingly, Defendants' actions must be set aside as arbitrary, capricious, an abuse of discretion, not in accordance with law, in excess of statutory authority, and without observance of procedure required by law, all in violation of the APA.  5 U.S.C. § 706(2)(A), (C), and (D).

## PRAYER FOR RELIEF

**WHEREFORE**, SWVP respectfully requests that this Court enter judgment in its favor and that the Court:

A. Declare that Defendants violated NEPA when they approved the construction and operation of BIA Well 9-B without undertaking any analysis to evaluate the potential impacts to human health and the environment, including impacts on groundwater;

B. Declare that Defendants violated the APA when it approved the construction and operation of BIA Well 9-B without undertaking any analysis to evaluate the potential impacts to human health and the environment, including impacts on groundwater;

C. Set aside and vacate any approvals or authorizations given related to the construction and operation of BIA Well 9-B;

1  D. Enjoin the continued operation of BIA Well 9-B (and of BIA Wells 9 and 10-B to the extent such wells are still operational) until the required environmental review under NEPA has been completed;

E. Award SWVP the costs incurred in pursing this action, including attorneys' fees and reasonable expenses, as authorized by the Equal Access to Justice Act, 28 U.S.C. § 2412(d), and other applicable provisions; and

F. Grant such other and further relief as the Court deems proper.

DATED this 26th day of June, 2019.

JENNINGS, HAUG & CUNNINGHAM, L.L.P.

s/ James L. Csontos
Ronnie P. Hawks
James L. Csontos
Attorneys for SWVP-GTIS MR LLC

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| APA | Administrative Procedure Act |
| BIA | Bureau of Indian Affairs |
| CEER | Categorical Exclusion Exception Review |
| CEQ | President's Council on Environmental Quality |
| CX | Categorical Exclusion |
| EA | Environmental Assessment |
| EIS | Environmental Impact Statement |
| FONSI | Finding of No Significant Impact |
| LBFU | Lower Basin Fill Unit |
| NEPA | National Environmental Policy Act |
| SCIP | San Carlos Irrigation Project |